## TERRITORY OF MONTANA, RESPONDENT, *v.* JOHN A. ROWAND, APPELLANT.

CRIMINAL LAW—*Murder*—*Practice*—*Variance between evidence and indictment*— *Objection, when too late.*—The defendant was convicted of the murder of one Joseph Bussiere. The indictment charged him with a wilful, premeditated, and deliberate assault, with intent to kill the deceased, and that he did wilfully, deliberately, premeditatedly, and of his malice aforethought kill him. The evidence of the prosecution upon the trial, proved conclusively that the killing of the deceased was unintentional, and that at the time of the killing it was the intention of the defendant to kill one Peter Martin. The whole of the testimony to that effect, however, was admitted without any objection on the part of the defendant. Neither did he make a motion that the jury should be instructed to acquit him, because of the failure to prove the intent, as charged, nor a motion in arrest of judgment, for that reason. No attempt to take advantage of the variance was made until motion for a new trial. *Held,* that by not objecting to the evidence at the time it was offered, or moving to strike it out before the verdict, the defendant waived his right to do so upon a motion for a new trial.

MURDER—*Instruction as to intent.*—An indictment for murder charged a defendant with an intent to kill the deceased. The proof of the prosecution, upon the trial, was to the effect that the killing of the deceased was unintentional, and that, at the time, the defendant intended to kill another man. No objection was made by the defendant to the admission of the testimony establishing that fact. The following instruction was given to the jury: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, John A. Rowand, at the time when, and the place where, he is charged in the indictment to have killed Joseph Bussiere, did, with malice aforethought, wilfully, deliberately, premeditatedly, and feloniously shoot at Peter Martin, mentioned in the evidence, with the intent then and there to kill said Martin, and while so engaged did kill the deceased, Joseph Bussiere, then you will find the defendant guilty of murder in the first degree." *Held,* that while there was a variance between the proof and the allegation of intent in the indictment, the instruction accorded with the evidence before the jury. *Held, also,* that the instruction correctly stated the law as to intent.

PRACTICE—*Instructions must conform to evidence before the jury*—*Objection to illegal evidence, how taken.*—*Held,* in the case at bar, that the charge of a court should conform to the evidence before the jury; and that, if illegal evidence has been introduced upon a trial, it should first be stricken out, on motion, so that the charge of the court can conform to the legal evidence. *Held, also,* that under such circumstances specific instructions should be requested.

*Variance between evidence and pleadings — When a question of law. — Held,* in the case at bar, that whether there is a variance between the allegations of an indictment, and the evidence introduced upon a trial thereunder, is ordinarily a question of law, to be passed upon by the court, when objection is made to testimony offered; but that in some cases, when it is not plain that the evidence is at variance with the pleadings, the question may be, incidentally, one of fact for a jury (as in *Commonw.* v. *Gateley,* 126 Mass. 52), the same principle being involved, however, as the jury must first be instructed as to what a variance is, before it is left to them to determine any such question.

PRACTICE, CRIMINAL — *Murder — Burden of proof.* — In the case at bar, the defendant having been convicted of murder, one of the errors assigned was that the jury was not properly instructed as to the burden of proof, in accordance with the rule in criminal cases; that such burden always rests with the prosecution. *Held,* that while such is the general rule as to the burden of proof, although it is subject to the exception, that when the accused relies upon some special defense to meet the *prima facie* case made against him, the burden is upon him to so far establish such defense that it at least raises a reasonable doubt as to his guilt, the rule as laid down in section 40, division 4, of the Compiled Statutes, in cases of homicide, modifies it. (*Territory* v. *Manton,* 8 Mont. 95, cited. BACH, J., delivered a dissenting opinion.)

*Appeal from the District Court, Silver Bow County.*

### STATEMENT.

The defendant, John A. Rowand, was tried at the April term, 1888, of the District Court of Deer Lodge County, for the killing of Joseph Bussiere, in Silver Bow County, on the twenty-sixth day of April, 1887. He had obtained a change of venue from Silver Bow County, in which the indictment against him had been found, to Deer Lodge. The jury in the case found him guilty of murder in the second degree, and fixed the punishment at imprisonment for life. From the judgment of the court in accordance with said verdict, and an order overruling his motion for a new trial, the defendant appealed. The facts appear in the opinion.

*W. Y. Pemberton,* and *E. W. Toole,* for Appellant.

The defendant is charged with a wilful, premeditated, and deliberate assault, with intent to kill one Bussiere, and that he did so kill him. The entire scope of the testimony shows, without any conflict, that the wilful, premeditated, and deliberate attempt to kill, if any existed, was directed at one Martin, and not at deceased. Upon the theory that the proof supported the charge, and that there was no fatal variance, the court accordingly instructed the jury. This was fatally erroneous. (See

Wharton on Criminal Evidence, pp. 92–146; *Commonw.* v. *Richardson*, 126 Mass. 34; 30 Am. Rep. 647.) The only reference we find to the subject in the Criminal Practice Act is on page 316, section 222. The instructions proceed throughout upon the theory that it devolves upon the defendant to disprove certain presumptions arising from a given state of facts, when under the law applicable to this case, the Territory must, upon the whole facts and circumstances taken together, make out its case beyond a reasonable doubt. The sixth instruction in defining murder requires that defendant should be duly considerate and careful of the lives and safety of all persons. No one can doubt that this is error, and applicable only to manslaughter. The twenty-seventh instruction given by the court must necessarily work a reversal of the case. A specific intent to kill is essential in murder in the second degree, as well as murder in the first degree; and yet the jury were instructed that if defendant was so intoxicated as to be incapable of forming such a specific intent, it would be, nevertheless, murder in the second degree. This is in direct conflict with the doctrine announced in the instructions given at the instance of defendant.

*William E. Cullen*, Attorney-General, for Respondent.

There is no conflict in the testimony as to the fact that when the defendant fired the fatal shot, he intended it to hit the witness, Martin, and not the deceased; but this fact makes no difference as to the degree of his crime. It is not necessary that the defendant should have intended when he fired his pistol to kill the deceased. If intent to kill and malice accompanied the shooting, the crime for which defendant was convicted was complete, and if to this were added wilful deliberation and premeditation, his offense would be murder in the first degree. (*Wareham* v. *State*, 25 Ohio St. pp. 601–606; 1 Bishop on Criminal Law, 7th ed. § 323; 1 Wharton on Criminal Law, § 317, and cases there cited; also, § 319.) Instruction numbered 6 correctly states the legal definition of malice. In its common and popular sense the word "malice" means hatred, ill-will, or hostility to another, yet in its legal sense it has another and very different meaning, and includes all acts done with an evil disposition, a wrong and unlawful purpose; the wil-

ful doing of an injurious act without lawful excuse. (2 Bouvier's Law Dict. 91, 92; *Commonw.* v. *York*, 9 Met. 104; 43 Am. Dec. 373; *Wills* v. *Noyes*, 12 Pick. 324; *Ann* v. *State*, 11 Humph. 159; Wharton on Homicide, § 52 *n.*) The objection raised by appellant to the twenty-seventh instruction, given by the court, is a mere legal quibble. The language is not "forming a specific intent to kill," but "the specific intent to kill," which is the essential ingredient of murder in the first degree. By this language, the jury understood that the court referred to that deliberate intent and premeditation, which he had already instructed them was the distinguishing feature of murder in the first degree. Instructions should never be considered separately, but each as limiting and construing other portions, and if they correctly state the law as a whole, the judgment should not be disturbed. (*Kennon* v. *Gilmer*, 5 Mont. 257; 51 Am. Rep. 45.)

McCONNELL, C. J.—The appellant was convicted at the April term, 1888, of the District Court of Deer Lodge County, of murder in the second degree, for killing Joseph Bussiere, and sentenced to imprisonment for life. A motion for a new trial was overruled, and an appeal was taken to this court. There are two grounds of error relied on for reversal : (1) A variance between the indictment and the proof, and error in the instruction of the court to the jury upon this point. (2) Errors in the instructions to the jury in other particulars.

1. The defendant is charged with a wilful, premeditated, and deliberate assault with intent to kill the deceased, Joseph Bussiere, and that he did wilfully, premeditately, deliberately, and of his malice aforethought, kill him. In other words, the deadly intent is charged to have been entertained by the defendant towards the deceased. But it is insisted that the whole scope of the proof shows conclusively that he intended to kill one Peter Martin, and that the killing of deceased was purely unintentional. We observe that the indictment does charge that the assault was made upon the deceased with the intent to murder him; and it is conceded that the proof shows that the defendant intended to kill one Peter Martin, and that the killing of the deceased was unintentional. In order the better to understand the application of the principles of law, which we think govern

this subject, we will first give a condensed statement of the evidence touching the question of the intent of the defendant. The witness, Peter Martin, who was the keeper of the Branch Mint Saloon, in the city of Butte, where the killing took place, testified that it was about ten o'clock in the night when the defendant came to his saloon with another party, and ordered two drinks, and, after taking the drinks, told Martin to charge them. This Martin refused to do; whereupon he said, "If you don't charge them to me, charge them to yourself." The witness, in substance, ordered him out of his house, to which the defendant said, "All right," and walked out. He came back again in about half an hour, and found the witness and deceased alone in the saloon. Defendant felt in his pocket, as if looking for some money, but finally said, "I ain't got none." When he started to say something else, witness told him that he did not want him in there, and came from behind the counter, took hold of him, and conducted him out of the house, the defendant going without resistance; but as he got to the door, he commenced to use abusive language to witness, who went back behind the counter, and got a police whistle, to call a policeman to come and arrest him. The whistle could not be blown very loud, and witness went to the door, which was ajar some three or four inches, and opened it wider for the purpose of blowing the whistle for the policeman, when he found defendant standing close to the door with pistol in hand. Defendant immediately fired, the ball grazing the arm of witness, and entering the back of deceased, inflicting a wound of which he died in some three or four hours. The witness also stated that deceased had not said a word to defendant, and, so far as he knew, never had any trouble of any kind with the defendant. Witness also testified that he told the defendant when he ordered him out that he was no gentleman, and he did not want him in there. The witness Jordan, who was a policeman, and arrested the prisoner in a few minutes after the killing, testified that when he arrested him he said, "I hit the wrong man, and have a notion to go back and kill the other son of a bitch;" and further, when he was trying to take the pistol from him, the witness remarked, "John, you had better let me have that gun," and he replied, "I will," and then said, "No, I won't; I am going back to kill that other man."

He was then about twenty-five feet from Martin's saloon. The witness, William Rutledge, testified that he was passing the door of Martin's saloon, and, looking in, as the door was ajar, saw defendant backing out, and as he got out he whipped out a pistol from his pants, and threw it across his hands, and remarked, "Come out of there, g—d d——n you, and I will fix you." Witness then left, and went to another saloon near by, where, in a short time, he heard the shot fired. He stepped out upon the street at once, and saw the defendant put up his pistol, and walk up the pavement about twenty feet, and immediately return to the front of Martin's saloon, and pull his revolver out again. The witness, R. E. Haislop, testified that he was the first man who got to the defendant after the shooting, and, in answer to the question, "What is the matter with you?" he replied, "Well, I won't let any son of a bitch abuse me." The witness, W. P. Emory, testified that the defendant came to him, and wanted him to go into a pawnbroker's shop and redeem a pistol for him. He did so, but refused to let him have it that night, as he said, "I will fix that son of a bitch to-night." The pawnbroker's shop was only about two hundred and fifty or three hundred feet from Martin's saloon, and the proof showed that he obtained the pistol on that occasion from the pawnbroker. The witness, C. C. Rhodes, testified that he was crossing the street in front of Martin's saloon; that he saw the defendant standing about two feet from the edge of the sidewalk, and Martin in the door, when defendant said, "Come outside; I don't allow any son of a bitch to abuse me," and immediately fired, and Martin jumped to one side of the door. The witness, E. Hirbour, testified that he heard, a short time before the killing, on the same night, the defendant say to one Max Lelande that the one who kept the Branch Mint Saloon was a damn son of a bitch; and, when they were about to take a glass of beer together, defendant said, "Before I take that beer he will have to take back what he said."

The whole of this testimony bears directly upon the questions of the motive and intent of the defendant in doing the shooting, and shows conclusively that he was very hostile towards Martin, and that the effort and intention was to kill him, and not the deceased. But the whole of it was admitted without objection

upon the part of the counsel for defendant; nor was the court ever asked to withdraw it from the jury. No motion was ever made to instruct the jury to return a verdict of acquittal because there was no evidence to sustain the charge of intent to murder the deceased. Nor was there any motion made to arrest the judgment, after verdict, for the same reason. No attention was paid to it at all until the motion for a new trial was made; and then advantage was sought to be taken of it, because instruction 8 charged that, if the assault was made upon Martin with intent to murder him, but deceased was unintentionally killed instead, then they should convict the defendant. This instruction is as follows, to wit: "If you believe from the evidence beyond a reasonable doubt that the defendant, John A. Rowand, at the time when, and at the place where, he is charged in the indictment, to have killed Joseph Bussiere, did, with malice aforethought, wilfully, deliberately, premeditately, and feloniously shoot at Peter Martin, mentioned in the evidence, with the intent then and there to kill said Martin, and while so engaged did kill the deceased, Joseph Bussiere, then you will find the defendant guilty of murder in the first degree." It is not contended that this instruction is not the law. (See 1 Bishop on Criminal Law, 4th ed. § 412.) Nor can it be insisted that it was not appropriately given under the evidence introduced. That there was a variance between the indictment upon the question of the deadly intent, and all the evidence touching that matter, there can be no doubt. The indictment charges that the intent was to kill the deceased, while all the proof shows that it was to kill Peter Martin. Much of the evidence upon this point was direct and unmistakable; for example, when the defendant said to the policeman who arrested him, that he had killed the wrong man, and he was going back to kill that other man. Upon objection this was clearly inadmissible; but it is not for the court to exclude incompetent testimony, unless objection be made to it. The charging part of the indictment covering the matter under consideration is as follows, to wit: ". . . . in and upon Joseph Bussiere, then and there being, feloniously, unlawfully, deliberately, wilfully, premeditately, and of his malice aforethought, did make an assault, and that he, the said John A. Rowand, a certain revolving pistol, then and there

charged and loaded with gunpowder and a leaden bullet, which said pistol he, the said John A. Rowand, in his hand then and there had and held, then and there unlawfully, feloniously, wilfully, deliberately, premeditately, and of his malice afore-thought, then and there him, the said Joseph Bussiere, intend-ing to kill and murder, did shoot off and discharge at, to, towards, and against and upon him, the said Joseph Bussiere. . . . ." The words, "then and there him, the said Joseph Bussiere, intending to kill and murder," may be stricken out, and still leave a good indictment for murder in the first degree, under the decisions of this court. (See *Territory* v. *Stears*, 2 Mont. 324.) But they cannot be rejected as surplusage on that account, for the reason that the deadly intent must be proven in order to make out a case of murder in the first degree; for the specific intent to kill is an essential element of that crime, and, having charged it in the indictment, it becomes descriptive of the offense, and must be proven, unless the defendant by his acts has waived it. That it is a variance, see the following authorities: Wharton's Criminal Evidence, § 146; *U. S.* v. *Brown*, 3 McLean, 233; *State* v. *Jackson*, 30 Me. 29; citing, *State* v. *Noble*, 15 Me. 476; *State* v. *Canney*, 19 N. H. 135. Whether there is a variance between the indictment and the evi-dence is ordinarily a question of law, and for the court to deter-mine. Mr. Thompson, in his work on Charging the Jury, page 13, section 9, says it is for the exclusive determination of the court; but we will see that this must be taken with some modification. The question can only arise upon the admis-sibility of the evidence upon the trial. If the evidence is plainly at variance with the pleading, it must be rejected at once by the court, upon objection, and not permitted to go to the jury at all. But there sometimes arise cases where it is not plain that the evidence is at variance with the pleadings, and incidentally it may become a question of fact for the jury. If, for instance, it is an indictment for forging a certain instrument of writing, and the original is lost or destroyed, and it becomes a question of conflicting secondary testimony as to its contents, it must be left to the jury to find the contents, and then to deter-mine, under proper instructions from the court, whether it agrees with the paper described in the indictment. (Wharton's

Criminal Evidence, § 117.)   In the case of *Commonw.* v. *Gateley*, 126 Mass. 52, the indictment charged the defendant with the embezzlement of treasury notes and national bank bills.   The evidence showed that his employer intrusted him with a bank check payable to bearer, with which to pay a note.   The custom was not uniform to pay notes with checks.   He sometimes did, and sometimes got them cashed, and paid them with the money. The defendant got the check cashed, and converted the money to his own use.   Whether the defendant embezzled the check or the money was the question, and upon it depended when the felonious intent first intervened.   If while he held the check, with which he should have paid off the note, then there would be a variance; but if in good faith he got the check cashed for the purpose of paying off the note, and afterwards embezzled the money, as charged, then there would be no variance.   So in that case it was left to the jury to say whether there was a variance. But the principle is always the same.   The court must tell the jury what a variance is; and, when they determine what the doubtful fact is, then they must say, under the law as given, whether there is a variance or not.   But in the case at bar there was absolutely no proof to show any intent to kill deceased, and even the presumption that men intend the natural results of their acts is overwhelmingly rebutted by the proof.   There was nothing to be left to the jury.   It was purely a question of the admissibility of evidence, and was for the court.   Every threat was made against Martin.   They had quarreled together, and the defendant conceived himself insulted by Martin.   He procured a pistol and returned to Martin's house, and after being put out and freshly insulted by him, he shot at Martin and grazed his arm, but shot the deceased in the back, and killed him instead.   There had never been the slightest trouble between the defendant and the deceased.   But all this proof of intent went to the jury without objection, and the instruction complained of in this connection was given in strict conformity with the proof, as it was the duty of the court to do. The charge must conform to the evidence.   If the evidence be illegal, it must first be stricken out upon motion, and then it will be the duty of the court to make its charge conform to the evidence as it then stands.   Specific instructions must be asked

for. "It is not error for the judge to omit to charge the jury
on a particular point, unless asked to do so at the trial. A
party cannot, in a court of error, avail himself of an omission
which he made no effort to have supplied at the time. The rule
is that for a misdirection the judgment will be reversed, though
no instruction be requested; but not for the omission to instruct
on a particular point, where the judge was not requested to do
so." (Thompson's Charging the Jury, § 81.)

The argument that there was no assault made upon the
deceased is fallacious. If he was shot dead, there certainly
must have been a battery, and there can be no battery without
an assault. It can make no difference whether the assault was
intended for the deceased, or for Martin. "The thing done
having proceeded from a corrupt mind, it is to be viewed the
same, whether the corruption was of one particular form or
another. Every act producing an unintended result must, when
evil, be measured either by the intent, or by the result. The
common-law rule measures it substantially by the latter, hold-
ing the person guilty of the thing done, where there is any kind
of legal wrong in the intent, the same as though specifically
intended." (1 Bishop on Criminal Law, 4th ed. § 411.) The
charge in the indictment is that the defendant committed an
assault and battery upon the deceased, by shooting him with a
pistol, and thereby killed him. This is conceded in the proof.
The charge in the indictment that it was done wilfully, deliber-
ately, premeditately, and with malice aforethought, is sustained
by proof that the assault and battery were committed with a
mind imbued with those qualities; and on account of such cor-
rupt intent the law will hold the defendant guilty of the unin-
tended killing, the same as though specifically intended. There
is no variance between the evidence and the allegations in the
indictment, except as to the averment that the defendant
intended to kill the deceased. The material point involved in
this particular is, that the defendant did the fatal act with a
felonious, deadly intent. This was proven. The averment
that the deceased was the object of this intent becomes material,
only because made descriptive of the offense by the indictment.
We think the defendant waived his right by not objecting to the
evidence at the time it was offered. His objection comes too

late upon a motion for a new trial. He cannot be permitted to make the experiment of a trial without objection, and when he is convicted ask for a new trial, that he may do that which he might have done before. We have carefully looked into the testimony, and do not see how the result could be different, if a new trial was had upon an indictment which conformed to the facts in the case.

2. The next objection urged by defendant's counsel is that the court did not properly instruct the jury as to the burden of proof, counsel contending "that the true rule is that the burden of proof in criminal cases never changes, but always rests with the prosecution, from the beginning to the close." We do not call in question the correctness of this statement as a general rule; but this is subject to the exception, that when the accused relies upon some special defense to meet the *prima facie* case made against him by the people, the burden of the proof is upon him to so far establish such a defense that it at least raises a reasonable doubt as to his guilt. Besides, section 40 of our Criminal Laws, which is literally copied in instruction 10, given at the request of the prosecution, directly modifies the rule contended for by counsel for defendant. We have had occasion to comment upon said section in the case of *Territory* v. *Manton*, 8 Mont. 95 (decided at the present term of this court), and we do not deem it necessary to restate here what we said in that case. In this case the defendant certainly had the benefit of the rule asked for. There were thirty-one instructions drawn with great skill, covering every conceivable phase of the case, especially the law of self-defense, drunkenness, and reasonable doubt, given at the request of the counsel for the defendant, winding up with the admonition that it is better for ninety-nine men to escape than that one innocent man should be punished. No instruction asked by defendant was refused.

3. There are some other objections made to instructions given in behalf of the prosecution, but they are either verbal criticisms or objections, which if otherwise well founded were abundantly cured by those given in behalf of the defendant. We do not deem it necessary to notice them further. While the punishment assessed by the jury is severe, we cannot say, under

all the proof, that it is too great for the defendant's rash and intemperate act. Let the case be affirmed.

LIDDELL, J., concurs.

BACH, J. (*dissenting*).—I dissent from the majority of the court in this case. Granting that the allegations referred to are material, I am of the opinion that they must be proved, and that defendant may take advantage of such failure upon a motion for a new trial. I think that the opinion of the majority of the court, if fully applied, would lead to the conclusion that A could be convicted of the murder of B, upon an indictment charging him with the murder of C, merely because his counsel chose not to object to immaterial testimony. Before expressing my views of the question, I wish to state that I think the authorities cited in the majority opinion do not sustain that opinion. I apprehend the rule to be this: Where the question of variance is a doubtful question—for instance, where the controversy is whether or not the article mentioned in the indictment is the article proved by the testimony—and there is no evidence *pro.* and *con.*, then the question of variance is a question for the jury, under the general rule of proving every material issue beyond a reasonable doubt; and, on the other hand, where there is an admitted variance, then there is failure of proof, which may be taken advantage of by motion for a new trial, upon the ground that a material issue remains unproved. That is all that was decided in the case cited in the opinion from which I dissent, the case of *Commonw.* v. *Gateley*, 126 Mass. 52. Perhaps this will more fully appear from the opinion of the court, which is short, and is as follows, in full: "The indictment charges that Swasey embezzled treasury notes and national bank bills. The defendant contends that the evidence shows an embezzlement of a bank check, and that, therefore, there was a variance. But we are of the opinion that the court properly left this question to the jury. The evidence tended to show that Swasey had the right, in the course of his duty, to present the check to the bank, and draw the money upon it. There was no evidence that he made any use of the check, except to draw the money upon it. The jury might well find, upon the evidence, that there was no misappropriation or conversion of

the check, and that the embezzlement by Swasey of the property
of his employer was not completed until after he had drawn the
money from the bank." The defendant there was accused of
embezzling money, and he was convicted of embezzling money,
and not convicted of embezzling a check; and the court held
that it was for the jury to decide from the evidence, at what
time, and as to what article the *animus furendi* was formed.
The defendant was not convicted of embezzling a check, under
an indictment charging him with embezzling money or bank-
notes; and the court, it seems to me, plainly marks the distinc-
tion which I have sought to indicate between a fatal variance,
which is a failure to prove a material allegation, though perhaps
there may be perfect proof of a matter not alleged, and a dis-
pute in testimony, as to whether or not the allegation has been
proved, which latter must always be a question for the jury.
Consider the question upon general principles. We must
remember that there is other matter of description than the
intent. The indictment charges, not only that the defendant
assaulted the deceased, but that the assault was made deliber-
ately, maliciously, and premeditately upon the deceased. The
evidence shows conclusively that no such assault as that was
made upon the deceased. The deliberate assault is made upon
one whose name is not referred to in the indictment. Why
should counsel for defendant object to immaterial testimony,
except, perhaps, out of consideration for the court? He, by his
silence, waives any objection which he might have; but surely
he may remain silent as to the proof of one crime, when his
client is accused of another; and his client cannot be found
guilty of the latter, because the former is proved. If A is
accused of killing B, he cannot be convicted of that crime,
because evidence admitted without objection from him shows
that he killed C. In other words, the issues must be proved, as
alleged, in all their material parts, and if they are not proved,
the admission of a volume of irrelevant testimony does not help
the matter. Another example: A is accused of stealing coin,
and upon the trial evidence admitted without objection proves
that he stole a horse, but there is no evidence that he stole coin,
can a conviction be sustained either as to the coin or as to the
horse? Why should the defendant, by calling attention to a

fatal variance, call down upon his head the wrath of the law? It would seem to me to be a mistake for counsel to call attention to the variance by any objection to the testimony. We have a statute which declares that, if the defendant in a criminal case is acquitted by reason of a material variance, such acquittal shall not be a bar to further prosecution. This statute would work a peculiar hardship, when construed in connection with the rule established by the law of this case. Even in civil cases, the proposition is familiar that the *allegata* and *probata* must correspond, and that advantage may be taken of a failure in this respect by a motion to set aside the verdict. In *Johnson* v. *Moss*, 45 Cal. 515, a motion for nonsuit was denied. The Supreme Court say : "No objection was taken to the testimony as it was introduced, but the defendant was not thereby precluded from moving for a nonsuit, on the ground that it failed to prove the contract declared on." The plaintiff sued on one contract and proved another. The court reversed the order refusing a nonsuit. The assault as alleged is material. It has not been proved. The effect of this is not, in my opinion, avoided by the proof of other facts not in issue, not alleged. Says Mr. Wharton (Criminal Pleading and Practice, § 813): "A conviction contrary to the evidence will be set aside, and such is more particularly the case where any of the material allegations of the indictment remain unproved." This involves more than a variance. It is the absolute and total failure to prove the deliberate assault in manner and form as charged in the indictment. No deliberate, premeditated, or wilful assault upon the deceased was proved, or sought to be proved, and such, and none other, was the assault alleged.

*Judgment affirmed.*