TERRITORY, respondent, *v.* SCOTT, appellant.

MURDER. — *An instruction concerning threats and previous difficulties pre-sumed correct.* — The appellant objected to the following language of an in-struction: "Threats and previous difficulties are evidence tending to prove malice," on the ground that the court assumed thereby that there had been threats and previous difficulties. The transcript did not contain all the tes-timony in reference to said alleged error. *Held,* the court cannot presume that a charge is erroneous, and a party seeking to avail himself of error in a charge must furnish in the record proof of such error.

ID. — *An instruction concerning murder upheld in connection with the other in-structions given.* — The court gave the jury the following instruction: "If the jury find from the evidence, beyond a reasonable doubt, that the defendant killed Matilda Scott, and killed her unlawfully, and also with malice afore-thought, they must find him guilty of murder, and should then determine whether or not such murder is murder in the first degree or murder in the second degree." The court, in its charge, also gave definitions of murder in the first and murder in the second degree. The appellant insisted that be-cause of such instruction, the jury were authorized to find him guilty of mur-der in the first degree on a definition therein contained of murder in the second degree. *Held,* that there was no error.

*Appeal from District Court, Deer Lodge County.*

JOHN R. BOARMAN, for the appellant.

The court erred in giving, of its own motion, instruc-tion No. 9, which concludes as follows: "Threats and previous difficulties are evidence tending to prove malice." The error consists in this, that it was assumed that threats and previous difficulties had been proven. Proffatt on Jury Trial, sec. 326. "The court should always direct the attention of the jury to a hypothetical state of facts which they may or may not find from the evidence to be true." Thompson on Charging the

Jury, p. 42, sec. 47; 25 Cal. 197; 30 Cal. 540; *Anderson* v. *State*, 2 Ga. 379; *Stell* v. *Glass*, 1 Ga. 486–489. The following instruction: " If the jury find from the evidence, beyond a reasonable doubt, that the defendant killed Matilda Scott, and killed her unlawfully, and also of his malice aforethought, you should find him guilty of murder, and you should then determine whether it was murder in the first or second degree," — is wrong, for the reason that it authorizes the jury to find the defendant guilty of murder in the first degree upon a definition, alone, of murder in the second degree. The error is not cured by a correct instruction subsequently given. *State* v. *Johnson*, 74 Am. Dec. 322; *People* v. *Potter*, 71 Am. Dec. 763; *Clem* v. *State*, 31 Ind. 480; *Bradley* v. *State*, 31 Ind. 492; *Territory* v. *Manton, ante,* p. 162.

W. E. CULLEN, Attorney-General, for the respondent.

That portion of instruction No. 9, objected to by the appellant, states the law correctly, and contains no assumption that anything has been proven. If the next instruction complained of by the appellant is erroneous, then the statutory definition of murder is wrong. Comp. Stats., p. 504, sec. 18. The only portion of the statutory definition omitted is that which declares that the malice aforethought necessary to constitute the crime may be either express or implied; and this is not material to the definition. The distinction between express and implied malice is clearly drawn in the ninth instruction. For definition of murder, see *People* v. *Foren*, 25 Cal. 363; *People* v. *Haun*, 44 Cal. 98; *Ex parte Tayloe*, 5 Cow. 57; *People* v. *Enoch*, 13 Wend. 167. The instruction contains the definition of murder simply. The distinction between the two degrees is clearly pointed out in other portions of the charge.

McCONNELL, C. J. The defendant has appealed from an order of the district court of Deer Lodge County

overruling his motion for a new trial, and from the judgment of conviction rendered by said court against him on the thirtieth day of December, 1887. He was indicted for the murder of his wife, Matilda Scott, on the sixteenth day of November, 1887, in said county, and territory of Montana. He was tried and convicted of murder in the first degree on the twenty-fourth day of the following December. He was, by the court, sentenced to be hanged on the seventeenth day of February next. The transcript does not contain the evidence, and no question is made as to its sufficiency to support the verdict. It contains a number of exceptions to the admissibility, upon the trial, of certain evidence, all of which have been abandoned, and not insisted upon by the counsel of the prisoner; but on account of the great magnitude of this case, involving as it does the life of a human being, we have given these exceptions a careful consideration, and find none of them well taken.

The only grounds relied upon for a reversal are alleged errors in the charge of the court. Instruction No. 9 is the first one to which exception is taken. It is as follows, to wit: "If the jury find from the evidence, beyond a reasonable doubt, that the defendant killed the deceased, Matilda Scott, and killed her unlawfully, then they should next determine whether or not such killing was murder. The second essential requisite to constitute the crime of murder is, that the killing should have been done with malice aforethought. Malice is thus defined: 'Express malice is that deliberate intention unlawfully to take away the life of a fellow-being which is manifested by external circumstances capable of proof. Malice may be presumed to exist where no considerable provocation appears, or where all the circumstances show an abandoned and malignant heart. Threats and previous difficulties are evidence tending to prove malice.'" The only criticism made upon the instruction

is upon the sentence, "Threats and previous difficulties are evidence tending to prove malice"; and it is insisted that this was clearly erroneous, in that it assumed as a fact that threats and previous difficulties had been proven, thereby invading the province of the jury to the prejudice of the defendant. In the absence of the testimony, the law presumes that the instruction was pertinent to the evidence before the jury. Indeed, we are not left entirely to this presumption of law, because the bills of exceptions in the transcript contain enough evidence to show that the prisoner and the deceased had had previous difficulties, and that he had committed upon her an assault and battery, for which he had been arrested. This instruction does not assume that the evidence proved the existence of threats and previous difficulties. To charge that threats and previous difficulties are evidence tending to prove malice, is neither to assume that they had been proven, nor to tell the jury that such was the case; but it was equivalent to saying that if, in view of the evidence before them, threats and previous difficulties existed, they should look to it in determining the question whether there was malice. It is no invasion of the privileges of the jury for the court to present to them its views of the bearings and tendency of the evidence. The court had just defined, in the same instruction, what malice was; and the object of that part of the charge under consideration was to call their attention to the relevancy and bearing of this evidence as one of the proofs of the existence of malice. While the existence of malice and the existence of threats and previous difficulties are facts to be found by the jury, and while it would be error for the court to assume that they have been proven, it is a matter of law for the court to determine what relation, as proofs, the one bears to the other. In Thompson on Charging the Jury, page 71, we find the following, to wit:

"It is not an invasion of the province of the jury for the judge to tell them that they may consider certain evidence as tending to prove a certain fact, without making any comment as to the weight of such evidence, or that testimony has been introduced to prove a certain matter, if such is the fact." *People* v. *Vasquez*, 49 Cal. 560. Mr. Wharton, in his work on Criminal Evidence, section 784, says: "It is also relevant to inquire whether the party charged was on bad terms with the party injured, or was inflamed by any special animosity to a cause with which the latter was identified. In connection with this, evidence is admissible of threats and declarations of hostile purposes, as well as of quarrels and alienations." Hence the law was correctly stated, and in doing so, the province of the jury was not invaded. He did not tell them that such evidence proved the existence of malice, or that this was its bearing. We are referred to the cases of *Anderson* v. *State*, 2 Ga. 380, and *Stell* v. *Glass*, 1 Ga. 486–489, in support of the position that this instruction was an invasion of the province of the jury. In the first of these cases, the trial judge charged the jury that, under the facts in this case, they should allow interest to the plaintiff from the time of the receipt of the money by Anderson. In commenting upon this, the supreme court of Georgia says: "Nothing is left to be inquired into or found by the jury touching the facts which relate to interest; the court appears to assume the facts necessary to charge the defendant with interest as proven, and directs the jury to find interest against him." In Stell's case, the judge delivered his opinion as a matter of direction of fact to the jury, and it was held to be error. It will be observed that there is a wide difference between these cases and the one at bar. They both directed the jury what conclusions to reach from certain facts which they assumed to have been proven; while in the case at bar, the court merely called

the attention of the jury to the relation of threats and previous difficulties as proofs of malice. He neither directed them to find that threats and previous difficulties nor malice existed, but left them free to determine that for themselves. They were free to say, in the light of the evidence, whether there were threats and previous difficulties, and if they so found them, to consider them as proofs of the existence of malice. In the case of *Anderson* v. *State,* the court quotes approvingly from the case of *United States* v. *Fourteen Packages*, Gilp. 35, this language, to wit: "That it is not an invasion of the privilege of the jury for the court to present to them its views of the nature, bearings, tendency, and weight of the evidence." We agree that the court should direct the attention of the jury to a hypothetical state of facts which they may or may not find from the evidence to be true. This is the ordinary rule. He should never so frame his instruction as to assume a disputed state of facts as proven. *Walters* v. *Railroad Co.,* 41 Iowa, 71; *Bond* v. *People,* 39 Ill. 26; *Insurance Co.* v. *Baker,* 94 U. S. 610.

Chief Justice Parker, in the celebrated case of *Commonwealth* v. *Selfridge,* Horr. & T. Cas. 19, correctly states the rule as follows, to wit: " I hold the privilege of the jury to ascertain the facts, and that of the court to declare the law, to be distinct and independent. Should I interfere with my opinion on the testimony, in order to influence yonr minds to incline either way, I should certainly step out of the province of a judge into that of an advocate. All which I conceive necessary and proper for one to do in this part of the cause is, to call your attention to the points of fact on which the cause may turn, state the prominent testimony in the case which may tend to establish or disprove these points, give you some rules by which you are to weigh the testimony, if a contrariety should have occurred, and leave you to

form a decision according to your best judgment, without giving you to understand, if it can be avoided, what my opinion on the subject is."

While it is true that the judge cannot assume the existence of a disputed fact in issue, yet where the evidence is clear and conclusive as to the existence of the particular fact, and there is no evidence to the contrary, or where facts are admitted, an instruction assuming such facts as true will not work a reversal of the judgment; but if there is the least conflict in the evidence, or if the evidence is in any wise of a doubtful character, such ruling will be held erroneous. *Caldwell* v. *Stephens*, 57 Mo. 589–595; *Barr* v. *Armstrong*, 56 Mo. 577–588. In the absence of the testimony, we are unable to say whether there was any controversy as to the existence of threats and previous difficulties, or not. We will not presume that the charge is erroneous; but the party seeking to avail himself of errors in the charge must furnish in the record the proofs of such errors.

Instruction No. 11 is the next one to which exception is taken. It is as follows, to wit: "If the jury find from the evidence beyond a reasonable doubt that the defendant killed Matilda Scott, and killed her unlawfully, and also with malice aforethought, they must find him guilty of murder, and should then determine whether or not such murder is murder in the first degree or murder in the second degree." It is insisted that this is erroneous, for the reason that it authorizes the jury to find the defendant guilty of murder in the first degree upon the definition of murder alone in the second degree. It is difficult to understand how this instruction could mislead the jury into finding the prisoner guilty of murder in the first degree upon a definition of murder in the second degree. The court only says to them, in effect, that when the killing is done unlawfully, and with malice aforethought, it would be murder, and that they

should then proceed to determine whether it is in the first or second degree. He immediately proceeds to give them a definition of murder in the first degree and of murder in the second degree, as follows, to wit: "All murder which shall be perpetrated by means of poison, or lying in wait, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree. The unlawful killing must be accompanied with a clear and deliberate intent to take life in order to constitute murder of the first degree. The intent to kill must be the result of deliberate premeditation. It must be formed upon a pre-existing reflection, and not upon a sudden heat of passion sufficient to preclude the idea of deliberation; but there need be no appreciable space of time between the intention to kill and the act of killing; they may be as instantaneous as successive thoughts of the mind. . . . . 'Premeditated' is defined to mean thought of beforehand for a period of time, however short. . . . . If, therefore, you find from the evidence beyond a reasonable doubt that the defendant murdered Matilda Scott willfully, deliberately, and with premeditation, you should find him guilty of murder in the first degree. If you find from the evidence beyond a reasonable doubt that the defendant did murder Matilda Scott, and you do not find him guilty of murder in the first degree, you should find him guilty of murder in the second degree. Murder in the second degree is the unlawful killing of a human being with malice aforethought, either express or implied,

where the killing is not done deliberately, and with some degree of coolness, or in one of the ways specified in the definition of murder in the first degree."

When these instructions are all taken together, it presents a clear and accurate definition of murder as it exists at common law, and draws the destinctions clearly between murder in the first degree and murder in the second degree. The jury are told that they must designate by their verdict whether it be murder in the first or second degree. They are also told that if the killing be done unlawfully and with malice aforethought it will be murder, and they are also told what murder in the first degree is, and what murder in the second degree is; and certainly no jury can be found that would fail to understand what their duty was when taking all these instructions together. They are instructed that all the elements of malice aforethought, willfulness, deliberation, and premeditation must concur, in order to constitute murder in the first degree. They are further told that if they found the killing was done unlawfully, and with malice aforethought, either express or implied, and the killing is not done deliberately and with some degree of coolness, or in one of the ways specified in the definition of murder in the first degree, that it would be murder in the second degree. With all this explicit instruction before them, it could not be possible that they could be misled in finding the prisoner guilty of murder in the first degree, under the common-law definition of murder, or the definition of murder in the second degree. The failure to designate the kind of malice (instruction 11), whether it was express or implied, is immaterial. This had previously been done in instruction 3, and the definition correctly given in instruction 9, so that the jury had the whole law upon the subject of malice before them. If the killing was done unlawfully, and with malice aforethought, it would

be murder at common law. And the purpose of the instruction criticised was to bring the minds of the jury to the point where they could understand that they had entered the domain of murder. First, the killing must be done unlawfully. This finding was to be the initial step; and they had been previously instructed as to what was excusable or justifiable homicide, and hence were prepared to determine whether it was unlawful or not. The next step was to find whether it was murder, distinguished from manslaughter; and their minds were, at this point, directed to the consideration of the question of malice aforethought, the great distinguishing landmark between murder and manslaughter. If they found malice aforethought to exist, then the killing must be murder, and this, too, without regard to whether the malice was express or implied. Having thus taken these two steps in the process of the analysis of the case, they were instructed that they should determine whether or not such murder was murder in the first degree or murder in the second degree. They were not told to rest their verdict at this point, but to go on, and find which degree of murder it was. Having determined that the killing was murder, they must designate in their verdict which degree it was. The question of the deadly intent, and the deliberate, cool purpose and premeditated design to take the life of the deceased, would then come under their consideration. And these elements of murder in the first degree were next given to them. And thus we find that by a natural, easy, and logical process, the minds of the jury were led by the instructions of the court through the whole law on the subject of murder. Each instruction was a step in their progress, and when taken together, embraced in a comprehensive unity the whole law on the subject. Mr. Thompson, in his work on charging the jury, very forcibly puts this rule as follows, to wit: "In all these cases the rule applies that the

judge is not bound in a single proposition to negative every exception, and include every possible condition. The charge is to be taken together; and if, without straining any portion of the language, it harmonizes as a whole, and fairly and correctly presents the law bearing on the issue tried, the judgment will not be disturbed because a separate instruction does not contain all the conditions and limitations which are to be gathered from the entire text." Thompson on Charging the Jury, 75; *People* v. *Doyell*, 48 Cal. 85.

The charge to the jury is remarkable for its clearness, fullness, and accuracy. The prisoner is carefully given the benefit of every possible legal right; and indeed, we agree with the counsel of the prisoner when he says in his brief: "The transcript in this case presents a record exceptionally free from errors, considering the gravity of the offense alleged against the defendant, and of which he stands convicted." The judgment of the court below is therefore affirmed.

*Judgment affirmed.*

McLEARY, J., and BACH, J., concur.