STATE, RESPONDENT, v. ROBERTS, APPELLANT.

(No. 3,044.)

(Submitted November 20, 1911.  Decided November 23, 1911.)

[119 Pac. 566.]

*Criminal Law—Homicide—Motive—Malice—County Attorney—*
*Misconduct—Argument to Jury—Evidence — Cross-examina-*
*tion—Scope.*

Homicide—Motive—Malice.
1.  It is not essential to a conviction of murder that a motive for the
crime be shown.  Malice may be inferred from want of considerable
provocation or from circumstances showing an abandoned and malignant
heart.

Witnesses—Cross-examination—Scope.
2.  Where one accused of murder claimed that information was filed
against his witness as an accessory not in good faith, but to induce
witness to testify against accused, the state could show on cross-
examination of a deputy county attorney that the information was filed
because the deputy believed that witness was guilty.

Criminal Law—Misconduct of Prosecuting Attorney—Argument to Jury—
Reversible Error.
3.  It was not reversible error for the county attorney in his argument
to refer to a reluctant witness for the state as one who was informed
against as an accessory to hold him as a witness, and to see that he
would not compound the felony, and to state that accused's counsel
might lay stress on that fact, and might argue that the state was hold-
ing a club over witness' head, etc., in the absence of any showing that
accused was prejudiced by the argument, and in the absence of a
request for an instruction to disregard the remarks.

*Appeal from District Court, Silver Bow County; Michael Don-*
*lan, Judge.*

W. A. ROBERTS was convicted of murder in the second degree,
and he appeals from the judgment of conviction, and from an
order denying a new trial.  Affirmed.

Cause submitted on briefs of counsel.

*Messrs. Breen & Jones,* for Appellant.

The authorities are unanimous, that a direct expression or
imputation of a man's guilt is reversible error, when made by a
county attorney.  (See *People* v. *Charles Quick,* 58 Mich. 321,

25 N. W. 302.) In the case of *People* v. *Dane,* 59 Mich. 550, 26 N. W. 781, a judgment was reversed because of misconduct of the public prosecutor in stating in his address to the jury, "that he knew that the defendant was the man who took the money." In *Thomas* v. *State,* 33 Tex. Cr. 607, 28 S. W. 534, the prosecuting attorney's remark to the jury that he believed the defendant guilty and that he ought to be hung was held ground for reversal. In *Henry* v. *State* (Tex. Cr.), 30 S. W. 802, the court held that it was reversible error for a prosecuting attorney in addressing the jury to say that he believed the defendant guilty, and ought to hang, and that he (the speaker) would pull the rope. In a very recent decision, the supreme court of Minnesota used the following language: "He [the county attorney] is, however, never justified in thrusting his personality into the case, and expressing his opinion that the defendant is guilty, or stating as a fact anything except what the evidence tends to prove, or which he in good faith expects to prove." (*State* v. *Clark* (Minn.), 131 N. W. 369; see, also, *Broznack* v. *State,* 109 Ga. 514, 35 S. E. 123; *Howard* v. *Commonwealth,* 110 Ky. 356, 61 S. W. 756; *Gawn* v. *State* (Cir. Ct.), 7 Ohio Dec. 19.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. S. Towner,* Assistant Attorney General, for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

Defendant was convicted in Silver Bow county of the crime of murder in the second degree, his punishment was fixed by the jury, and judgment was entered on the verdict. He appeals from the judgment and also from an order denying his motion for a new trial.

Four principal contentions are urged upon the court:

1. That the evidence is insufficient to justify the verdict. We have carefully read the testimony and other evidence in the record. It was all circumstantial, but we are convinced was amply sufficient to warrant the jury in determining that the defendant was guilty of murder beyond a reasonable doubt. (*State* v. *Byrd,* 41 Mont. 585, 111 Pac. 407.) The evidence justifies the

conclusion, we think, that Roberts shot and killed one Verholz while he, Roberts, was on what is commonly called a "drunk" in Butte on the night of November 5–6, 1910. It was not indispensable to find a motive for the crime. (*State* v. *Lucey,* 24 [1] Mont. 295, 61 Pac. 994; *State* v. *Vanella,* 40 Mont. 326, 106 Pac. 364; *State* v. *Suitor*, 43 Mont. 31, 114 Pac. 112.) Malice might be inferred from the fact that no considerable provocation appeared, or that the circumstances attending the killing showed an abandoned and malignant heart. (See section 8291, Rev. Codes.)

2. At the time of the shooting, Roberts was accompanied by one Scott. The latter was placed on the witness-stand by the [2] state, and the record of his testimony appears to disclose that he was an unwilling and most unsatisfactory witness. The information shows that, when it was prepared in the office of the county attorney, the names of both Roberts and Scott were included therein; but, before it was filed, the name of Scott had been stricken out. The record also discloses that, after the shooting, Scott was held in $500 bail as a witness, which was furnished. An information was then filed against him charging him with being "an accessory after the fact of murder." He was again arrested and confined under this information, but was released in *habeas corpus* proceedings. Before he was called to testify, this information was dismissed. Upon demand of his personal counsel that he be assured of immunity from prosecution in case he testified, the county attorney informed him that, if he told the truth "and came through with the same story he told before," no further information would be filed against him. As near as we can gather from the record, the defendant assumed the position that the proceedings against Scott were not instituted in good faith or founded in a *bona fide* belief in his guilt, but rather to get him in a frame of mind to testify against Roberts, and that, when the latter object was attained, he was promised immunity in case he testified in a manner satisfactory to the county attorney. In furtherance of this notion the defendant called L. P. Donovan, Esq., chief deputy county at-

torney of Silver Bow county, and by him identified the information on which Roberts was being tried, the information charging Scott with being an "accessory after the fact of murder," an application for a writ of *habeas corpus,* a writ of *habeas corpus,* and the return thereto. The latter information charged specifically that Roberts murdered Verholz. These documents were all admitted in evidence over the state's objection, and are all copied at length into the record to the great and entirely unjustifiable expense of Silver Bow county. The following proceedings then took place, *viz.:* "Donovan: I think I filed this information charging Scott with the crime of accessory after the fact to murder. Q. (by the county attorney): State why that information was filed." Over objection by the defendant, Donovan testified that he filed the information "because I received information that he was with Roberts on the night of the killing or shooting of Verholz. Later he was committed to the witness department, furnished bonds, and was released. About a day or two before the filing of the information charging him as an accessory, I received information to the effect that while in a saloon he stated he was a friend of Roberts, and was not going to see Roberts get the worst of it, and he would be outside of the state of Montana when the trial came up, and, believing that made him an accessory after the fact of murder—an attempt to conceal the crime of murder—I filed the information. I may say that I filed it for the double purpose, that he was in fact concealing a crime and I believed that he was in fact guilty of concealing a crime. I believed in good faith that he was guilty of the crime alleged in the information—trying to conceal a crime. I examined some of the witnesses in the case against Scott."

It is contended that in allowing Donovan to express his belief that Scott was guilty of being an accessory to a murder the court committed error. In placing Donovan on the stand, the evident purpose was to draw from his narrative of the proceedings against Scott the inference that they were not taken in good faith. The state undoubtedly had a right to dispel this

inference by showing, if it could, a well-founded ground for the proceedings. Defendant's counsel evidently recognized this when he, at one time, withdrew his objection to the question: "State why that information was filed." The county attorney could act upon the statements of witnesses; and we think he was justified in proceeding only when he had reasonable grounds for believing that a crime had been committed by Scott. When the defendant offered the information in evidence, he himself got before the jury the county attorney's sworn statement that he (Roberts) had murdered Verholz. We fail to see how he was prejudiced by Donovan's opinion that Scott was an accessory after the fact.

3. It is contended that the court erred in giving to the jury instructions relating to murder in the first and second degrees. This contention is disposed of in the discussion of No. 1 above.

4. During the argument to the jury the county attorney made this statement: "You have the witness Ben Scott, the witness [3] whom the state had so much difficulty in keeping here to testify, the witness who threatened to conceal testimony, and on that threat was informed against to hold him here and see that he would not compound a felony. Mr. Breen may lay considerable stress on this fact. He may argue that we were holding a club over his head." The statement, standing alone, shows no prejudicial error. We do not know what went before or came after it in argument. It is not entirely clear whether it is a statement of fact or simply a surmise as to what Mr. Breen might thereafter argue. At any rate, Scott was the state's witness, and the burden was on the defendant to show that he was prejudiced by the remark of the county attorney. This he has not done. There is testimony in the record tending to show that the county attorney had information that Scott had threatened to leave the state, and that proceedings were instituted against him in order to insure his presence at the trial, as well as to punish him for having participated in the crime. No request was made to the court to instruct the jury to disregard the remark. We do not think the ruling, even if regarded as

erroneous, should work a new trial of a case otherwise properly and carefully tried. It was a small matter.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.