STATE, RESPONDENT, v. COLBERT, APPELLANT.

(No. 4,589.)

(Submitted November 15, 1920. Decided December 6, 1920.)

[194 Pac. 145.]

*Criminal Law — Homicide — Defenses — Insanity—Evidence— Admissibility — Presumptions — Burden of Proof — Instructions.*

Homicide—Defense—Insane Impulse—Evidence—Admissibility.
    1. In a prosecution for murder in which the defense was irresistible insane impulse induced by unspeakable crimes committed on defendant by deceased, testimony touching the former's association with the latter, the defendant's conduct and habits as well as statements and declarations made by him before and after the homicide, reflecting in any way upon his mental condition, was admissible, the guide for determining its admissibility being remoteness in time from the homicide.

Same—Rebuttal Testimony—Admissibility.
    2. It was competent for the state to controvert the testimony of defendant's witnesses above referred to, by evidence tending to show that he was on friendly terms with him and that there was nothing unusual in his conduct or physical condition during the time testified to.

Same—Rebuttal Testimony to Discredit Defendant—Admissibility.
    3. Evidence otherwise competent may not be excluded on the ground that it had an incidental tendency to disclose something to defendant's discredit, *i. e.,* that he was in the habit of frequenting saloons.

Same—Presumptions.
    4. The homicide being established, nothing else appearing, the presumption of innocence is overcome, and the presumption that defendant intended the ordinary consequences of his voluntary act comes to the aid of the prosecution and establishes the necessary element of malice.

Same—Murder in Second Degree—Proof Required.
    5.  To warrant a finding of murder in the first degree, the state
    must establish premeditation and deliberation, while to find de-
    fendant guilty of murder in the second degree, proof of the killing
    alone is sufficient.

Same—Insanity—Burden of Proof—Instructions.
    6.  In a prosecution for murder, an instruction that, the commis-
    sion of the homicide being proved, the burden rested upon de-
    fendant to offer evidence in support of his defense, the burden,
    however, being no greater than to introduce evidence sufficient to
    raise a reasonable doubt as to his guilt, was proper.

Same—Proof in Mitigation—Burden on Defendant, When.
    7.  The homicide having been established and the evidence intro-
    duced by the state containing nothing tending to mitigate, justify
    or excuse it, it was incumbent upon defendant to introduce such
    evidence, failing to do which a verdict of guilty was the logical
    result.

Same—Defense—Insanity—Proper Instruction.
    8.  An instruction that if the jury believed beyond a reasonable
    doubt that defendant committed the crime as charged, knowing it
    was wrong and mentally capable of choosing either to do or not
    to do the act and of governing his conduct in accordance with his
    choice, they should find him guilty, though believing he was not
    entirely and perfectly sane, properly stated the law.

Same—Instructions to be Considered as a Whole.
    9.  The charge to the jury must be considered as a whole, and if a
    particular instruction is correct in point of law and applicable to
    the evidence, it is not erroneous because it does not refer to in-
    structions on other branches of the case with which it is consistent.

Same—Insanity—Refusal to Give Separate Instruction—When not Re-
    *versible Error.*
    10.  Where, from the charge as a whole, the jury must have under-
    stood that after defendant had introduced evidence tending to show
    that he was insane when he committed the homicide for which he
    was on trial the burden then shifted to the state to establish his
    sanity, failure to give a separate instruction to that effect was not
    reversible error.

    (MR. JUSTICE HOLLOWAY dissenting.)

*Appeal from District Court, Silver Bow County; J. J.
Lynch, Judge.*

JAMES COLBERT was convicted of murder in the second de-
gree, and from the judgment and an order denying his motion
for new trial he appeals.  Affirmed.

*Messrs. Canning & Geagan,* for Appellant, submitted a brief;
*Mr. M. F. Canning* argued the cause orally.

*Mr. S. C. Ford,* Attorney General, *Mr. Frank Woody,* As-
sistant Attorney General, *Mr. N. A. Rotering,* and *Mr. Frank
L. Riley,* for Respondent, submitted a brief; *Mr. Rotering*
argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant was convicted of murder in the second degree. From the judgment and an order denying his motion for a new trial he has appealed.

The evidence introduced by the state showed that on the evening of December 5, 1918, the defendant and his brother were standing on the north side of East Park Street near its intersection with Thornton Avenue, in the city of Butte, when Patrick Foley, the deceased, came walking toward them. When he had approached to within twenty or twenty-five feet, the defendant, without apparent cause or reason, drew an automatic pistol from his pocket and shot him. The deceased fell to the ground, dying a few minutes later. While he was lying on the ground, the defendant approached him, with the pistol presented, and stood pointing it at his head until apparently satisfied that he was dead. He thereupon turned to his brother, handed him the pistol, and turning away went directly to the sheriff's office and, after stating that he had killed the deceased, surrendered himself to this officer. As a defense, evidence was adduced to show that the homicide was due to an irresistible insane impulse induced by previous acts of the deceased toward the defendant which had continued over a period of several months prior to the homicide. These acts, defendant's evidence tended to show, were repetitions of the crime against nature committed upon the person of the defendant by the deceased.

The propriety of the conviction is assailed on the grounds that the court erred to the prejudice of the defendant in refusing to exclude testimony of the four witnesses Curtis, Rule, Couch and Green, called in rebuttal by the state, and in submitting instructions to the jury.

There was evidence, which was not controverted, that during the afternoon of December 5, and some hours before the homicide, defendant purchased the pistol from a dealer; that thereupon, in company with his brother, he went in search of the deceased; that the deceased was a single man, a miner

by occupation; that he occupied a room at a rooming-house kept by Mrs. Nelson and obtained his meals at the Clarence Hotel, kept by Mrs. Irvine, both places being on Park Street, a short distance east from the scene of the homicide; that the defendant and his brother, having sought the deceased at both these places but having failed to find him, were standing together at or near the intersection of the streets mentioned above, and were apparently waiting to meet the deceased while on his way from work to his room or boarding place; that in a few minutes the brother called the attention of defendant to the approach of the deceased and that the defendant thereupon drew his pistol and shot the deceased. Immediately before or after he fired the shot, he used the following expression, or one of similar import: "You will make no more trouble for me now."

The testimony of many witnesses, both laymen and experts, [1] was introduced by the defendant, tending to show that the shot was the result of an irresistible impulse of momentary insanity induced by the sudden appearance of the deceased, coupled with the recollection by defendant of the unspeakable crimes which the deceased had perpetrated upon him. Some of the witnesses, including defendant's mother and sister, testified in detail as to the history of defendant's life and particularly as to his appearance and behavior during several weeks immediately prior to the day of the homicide, and also as to his apparent physical condition. These witnesses testified that his physical health was not good. Their testimony tended to show that he had grown sullen and moody, remained at home, neglected to go to his daily work in the mine where he was employed, abstained from food, and was afflicted at times with fits of weeping, for which he refused to give any explanation. The defendant himself testified as to the crimes perpetrated upon him, asserting that he was afraid of the deceased and that he avoided him as much as possible. In addition to expert medical testimony, the state introduced and examined several lay witnesses, whose testimony tended to show that defendant worked as usual up to two days before the homicide and that nothing unusual was observed by them

in his conduct or physical condition. Among these was the witness Curtis, who was a shift boss in the Leonard mine at Butte. He testified that the defendant worked steadily in this mine from August 30 to September 26, doing contract work, which was more difficult than that which he did when working by the day. The witness Rule had known the defendant for three or four years. He testified that he himself was a saloon-keeper; that the defendant and the deceased were frequently together at his place, were apparently friendly, and that he had never observed anything wrong with the defendant. The witness Couch testified that he had known the defendant for thirteen or fourteen years, from the time he was a small boy, and that he was always a good boy, so far as he knew. The witness Green testified that he had known both the defendant and the deceased during the year 1917 at Burke, Idaho, where they worked for the same employer as miners and lived together in a cabin. He had also known both in Butte during the year 1918 prior to the homicide, and stated that they were frequently together. The testimony of all these witnesses was admitted over the objection that it was immaterial and irrelevant. It is argued that this evidence was improperly admitted, in that it did not reflect in any way upon the mental condition of the defendant, and that it was prejudicial because it showed incidentally that defendant was in the habit of frequenting saloons. The several rulings were correct.

The testimony introduced by the defendant was competent. A wide discretion is vested in the trial court in ruling upon the admissibility of evidence in such cases. Every fact, including the conduct and habits of the accused and statements and declarations made by him, both before and after the homicide, which reflects in any way upon his mental condition, may be admitted for consideration by the jury, whether the particular fact or incident has any probative value because of its remoteness in time from the homicide being the guide by which its admissibility is to be determined. (1 Wharton & Stille's Medical Jurisprudence, sec. 326; 7 Ency. of Evidence, 449 *et seq.; Commonwealth* v. *Pomeroy,* 117 Mass. 143; *Barnett* v.

*State* (Ala.), 39 South. 778; *State* v. *Leakey,* 44 Mont. 364, 120 Pac. 234; *People* v. *Wood,* 126 N. Y. 249, 27 N. E. 362; *People* v. *Manoogian,* 141 Cal. 592, 75 Pac. 177.) For the [2] same reason it was competent for the state to controvert the testimony of defendant's witnesses by evidence tending to show that the defendant was not, in fact, afraid of the deceased, but was on friendly terms with him, and that there was nothing unusual in his conduct or physical condition during the time with reference to which his witnesses testified. That the testimony of the witnesses in question incidentally disclosed that the defendant was in the habit of frequenting saloons did not affect its competency. The court should in every case carefully guard against the admission of evidence which tends to present collateral matters and thus prevent the [3] real issue from becoming obscured. At the same time, evidence otherwise competent may not be excluded on the ground that it has an incidental tendency to disclose something to the defendant's discredit. (*State* v. *Shafer,* 26 Mont. 11, 66 Pac. 463.) But, if it be conceded, for the sake of argument, that the evidence should have been excluded because it tended to discredit defendant, it could not have wrought prejudice, for it appeared from the testimony of several of defendant's witnesses that he was in the habit of drinking and of visiting saloons for that purpose, and that upon one occasion he and his brother engaged in a fight with the deceased.

It is contended that the court erred in submitting to the [4–7] jury the following instructions:

"No. 9. Every person in law is presumed to intend the ordinary consequences of his voluntary act."

"No. 19. You are instructed that upon a trial for murder, the commission of the homicide by the defendant being proved, the burden then rests upon the defendant of offering evidence in support of his defense or defenses, but in any case no greater burden rests upon the defendant than to introduce evidence sufficient to raise a reasonable doubt as to his guilt."

"No. 22. You are instructed that, if from all the evidence in the case you believe, beyond a reasonable doubt, that the

defendant committed the crime of which he is accused, in manner and form as charged in the information, and that at the time of the commission of such crime the defendant knew that it was wrong to commit such crime, and was mentally capable of choosing either to do or not to do the act or acts constituting such crime and of governing his conduct in accordance with such choice, then it is your duty, under the law, to find him guilty, even though you should believe from the evidence that at the time of the commission of the crime he was not entirely and perfectly sane."

"No. 25. If you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, James Colbert, on or about the fifth day of November, 1918, at the county of Silver Bow, state of Montana, did unlawfully, willfully, feloniously, deliberately, premeditatedly, and of his malice aforethought, kill and murder Patrick Foley in the manner and form as charged in the information, by shooting the said Patrick Foley with a pistol or revolver, then the defendant is guilty of murder in the first degree and you will so find by your verdict."

It is insisted that instruction No. 9 was in direct conflict with instructions Nos. 3 and 7. In instruction No. 3 the jury were told that in a criminal action the defendant is presumed to be innocent until the contrary is proved, and that in case there is a reasonable doubt of his guilt, he is entitled to acquittal. Instruction No. 7 informed them that the intent or intention is manifested by the circumstances connected with the offense and the sound mind and discretion of the accused. Conceding that these instructions were correct, counsel say that since the intent is the gist of the crime of murder, it cannot be established by a legal presumption, which instruction No. 9 told the jury is the law. There is no merit in the contention. It proceeds upon a misconception of the office served by the presumption of innocence in murder cases. It assumes that at no time during the course of the trial does this presumption cease to aid the defendant, and therefore that no other presumption is to be indulged. The presumption is a rebuttable one (Rev. Codes, sec. 7962), and may be

overcome by evidence. When this is done, it ceases to operate and its office is ended. (*State* v. *Hanlon*, 38 Mont. 557, 100 Pac. 1035.)

In murder cases when the killing is proved, the burden shifts to the defendant to adduce evidence tending to show mitigation, excuse, or justification. This is made the rule by the statute. (Rev. Codes, sec. 9282.) When, therefore, the homicide is established, nothing else appearing, the presumption of innocence is overcome and the presumption declared in instruction No. 9 comes to the aid of the prosecution and establishes the malicious intent which is a necessary element of the crime, and warrants a verdict finding the defendant guilty of murder. To warrant a finding of murder in the first degree, the prosecution must, of course, establish premeditation and deliberation. (*State* v. *Kuum*, 55 Mont. 436, 178 Pac. 288.) But to establish murder as defined in our Codes (sec. 8290), proof of the killing alone is sufficient to make out the case.

Of sections 186 and 1105 of the Penal Code of California, which are identical with sections 8290 and 9282 of our Codes, the supreme court of that state, in *People* v. *Jones*, 160 Cal. 358, 117 Pac. 176, said: "The effect of section 187 and of section 1105 of the Penal Code, construed together, is as though the law expressly declared that, while murder is the unlawful killing of a human being with malice aforethought, every killing is murder unless the defendant proves the contrary." We agree that this is the logical effect of the sections of our Codes *supra*, with the reservation, however, that in California mitigating circumstances, or those justifying or excusing the killing, must be shown by preponderance of the evidence (*People* v. *Ah Duck*, 61 Cal. 388), whereas in this state no greater burden is cast upon the defendant than to introduce evidence sufficient to raise a reasonable doubt. (*State* v. *Kuum*, *supra*; *State* v. *Spotted Hawk*, 22 Mont. 33, 55 Pac. 1026; *State* v. *Peel*, 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 169; *State* v. *Leakey*, 44 Mont. 354, 120 Pac. 234.) The rule in other cases in which a specific intent is a necessary element of the crime is that the prosecution is required to prove it, or, what

is equivalent, circumstances from which the jury may properly infer such intent. In such cases the propriety of giving the instruction is at least questionable. (*State* v. *Schaefer,* 35 Mont. 217, 88 Pac. 792.) But in murder cases section 9282, *supra,* dispenses with the necessity of evidence showing such intent, leaving it to be supplied by the presumption arising from the proof of the act of killing. Whatever, therefore, may be said of the propriety of the giving of the instruction in cases of manslaughter—because in such cases the accused is not presumed to be actuated with an intent to kill, though such intent may in fact exist—as this is a murder case, the giving of the instruction was entirely proper.

It is argued that in the omission of the last clause of section 9282, beginning with the word "unless" from the instruction No. 19, the court in effect told the jury that by the state's evidence the burden was cast upon the defendant of proving his innocence, whereas it was possible that from the state's evidence the jury might have believed that the act of the defendant in killing Foley was not that of a sane person. In other words, the instruction made it imperative that the defendant should introduce evidence in mitigation, or to excuse or justify the killing, and that if he failed to do so the jury could draw the conclusion that he was guilty. This is just what the statute declares. The defendant is not bound to introduce any evidence. He may rest upon the case made by the prosecution. In the sense, however, that when the homicide is established and the evidence introduced by the prosecution contains nothing tending to mitigate, justify or excuse it, as was the case here, it is imperative that the defendant introduce such evidence, if he desires to make any defense. If he does not, a verdict of guilty is the logical result. (*State* v. *Leakey, supra.*) The inquiry whether in a case where the evidence of the prosecution does disclose circumstances which tend to mitigate, excuse or justify the killing, the omission by the trial court of the clause in question would be held prejudicial, it is not necessary to consider because it does not arise here. In no case, however, may the trial court be held

in error when it has given an instruction fully applicable to the facts disclosed by the evidence.

There was no error in giving instruction No. 22. It was first [8] considered and expressly approved by this court in *State v. Peel, supra.* The doctrine laid down in this case was later considered and approved in the case of *State* v. *Keerl,* 29 Mont. 508, 101 Am. St. Rep. 579, 75 Pac. 362, and in that of *State* v. *McGowan,* 36 Mont. 422, 93 Pac. 552. Further consideration of it would be a profitless task.

It is argued that in submitting instruction No. 25 the court [9, 10] should have told the jury that it was incumbent upon the prosecution to prove the sanity of the defendant beyond a reasonable doubt. A trial court cannot embody all the law applicable to the case in a single paragraph of the instructions. The charge must be considered as a whole. (*State* v. *Van,* 44 Mont. 374, 120 Pac. 479; *State* v. *Byrd,* 41 Mont. 585, 111 Pac. 407), and if a particular instruction is correct in point of law and applicable to the evidence, it is not erroneous because it does not refer to instructions on other branches of the case with which it is entirely consistent. When the charge in this case is read as a whole, it cannot be doubted that the jury understood that after the defendant had introduced evidence tending to show that he was insane when he committed the homicide, the burden then shifted to the prosecution to establish his sanity beyond a reasonable doubt.

The judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HURLY, MATTHEWS and COOPER concur.

MR. JUSTICE HOLLOWAY dissents.