STATE, Respondent, v. DILLON, Appellant.
No. 8951.
Submitted March 5, 1951. Decided April 6, 1951.
230 Pac. (2d) 764.

26

Messrs. Greenan and Manion, Great Falls, Mr. Frank J. Roe, Mr. Thomas F. Kiely, Butte, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Thomas F. Joyce, Asst. Atty. Gen., Mr. Ted James, Co. Atty., Mr. William F. Browning, Asst. Co. Atty., Great Falls, for respondent.

Mr. Kiely, Mr. Roe, Mr. Joyce and Mr. Browning argued orally.

MR. JUSTICE ANGSTMAN:

Defendant was charged with murder in the first degree in the killing of Mary Sanders on June 17, 1949. She was convicted of murder in the second degree. The jury left the punishment to be fixed by the court and it was fixed at 30 years in the state prison.

Defendant's motion for a new trial was denied and she appealed from the judgment and the order denying the motion for a new trial.

At the time of the alleged offense and for many years prior thereto defendant operated the Colonial Hotel in Great Falls. About a year prior to the homicide she was granted a divorce from her husband, John Dillon. Her husband occupied a room at the hotel on June 17, 1949, and owed defendant room rent.

About 5:30 p. m. on June 17th John Dillon paid defendant $10 on the room rent account and two dollars which he had borrowed. There was evidence that about an hour later John Dillon again came to defendant's apartment at the Colonial Hotel and told her that if she would come to the Swiss Bar he would give her more money. Later that evening defendant started for the Swiss Bar but stopped at the Milwaukee Bar en route. There she talked with Elizabeth Williams and inquired if John Dillon was there, and she said that Elizabeth Williams told her that John Dillon didn't come in any more since Mary Sanders had been run out of there. Defendant then made threats to cut Mary Sanders if she found her at the Swiss Bar.

She thereupon went to the Swiss Bar. She found John Dillon seated at the counter drinking a cup of coffee. Some argument

ensued between her and John Dillon. This was of short duration and defendant then walked to the juke-box where Mary Sanders and two men were standing. There defendant started arguing with Mary Sanders about some property on Tenth Avenue South. The result was that defendant made a pass at Mary Sanders. One witness testified that it looked like an overhand blow, striking Mary Sanders on the left side of her neck. Mary Sanders fell to the floor. Blood started to flow from a wound or cut on the left side of her neck and without uttering a sound in a few moments she was dead.

After striking Mary Sanders defendant stepped to the lunch counter and started working on John Dillon. She struck him on the back with a paring knife. Gus Evans, the bartender, interceded and took the knife from her.

Defendant denied that she struck Mary Sanders with a knife. It is clear from the evidence that no other person struck Mary Sanders. Defendant claims that she took the knife from John Dillon. No one saw a knife in her hand when she struck Mary Sanders. One witness testified that he saw something flash as she struck the blow. Defendant was wearing two diamond rings on her right hand at the time. It is clear, however, from the description of the wound appearing in evidence that the wound could not have been made with the rings.

Other portions of the evidence will be alluded to in discussing the questions of law presented.

Defendant has assigned 19 specifications of error. They are grouped so that many of them are discussed together.

It is contended by defendant that the court erred in giving several instructions over her objection and in refusing to give an offered instruction, all of which have to do with the question of intent involved in second degree murder.

We have carefully examined such instructions and find no merit in defendant's contentions. From the earliest territorial days the law has been as was stated in Territory v. Rowand, 8 Mont. 110, 19 Pac. 595, on rehearing, 8 Mont. 432, 438, 20 Pac. 688, 690, 21 Pac. 19, wherein this court declared

that "the specific intent to take life accompanying the act of killing is an essential element of murder in the first degree only. It is not necessary to constitute murder in the second degree * * *. That the killing was done unlawfully, and with malice aforethought, is all that is necessary to make murder in the second degree." See also State v. Colbert, 58 Mont. 584, 194 Pac. 145; State v. Roberts, 44 Mont. 243, 119 Pac. 566, and State v. Chavez, 85 Mont. 544, 281 Pac. 352, 354.

In the latter case this court said: "However, the malice which brands a homicide as murder may be express or implied (section 10954, Id. [Rev. Codes 1921, now R. C. M. 1947, sec. 94-2502]), and, on proof of the homicide by the defendant, in the absence of evidence tending to show that the act amounts only to manslaughter, or that the defendant was justifiable or excusable, malice is presumed and the crime is presumed to be murder in the second degree. If the state would raise the crime to first degree murder, the burden rests upon the prosecution to show deliberation; on the other hand, if the defendant would reduce it to manslaughter, there must be evidence adduced by the defense, or appearing in the state's case, sufficient to raise a reasonable doubt in the minds of the jury as to the existence of malice." The instructions complained of and the court's refusal to give the offered instruction above alluded to were in line with the holding in the above cited cases.

Complaint is made that the court gave several instructions on second degree murder and thereby carried the impression to the jury that the court's idea was that defendant was guilty of murder in the second degree. We are not impressed with this contention. There were also several instructions given defining the different phases of manslaughter and several on first degree murder. The mere fact that several dealt with second degree murder is no reason for condemning them when they correctly stated the law.

Defendant contends that instructions 8, 11, 13 and 14 cannot be intelligently understood.

Instruction No. 8 is in the exact language of R. C. M. 1947, section 94-2502. Instruction No. 13 is in the exact language of R. C. M. 1947, section 94-2503.

Instructions Nos. 11 and 14 explained the distinguishing features between murder of the first and second degree. While these instructions may not be classed as model instructions we think they substantially stated the difference between first and second degree murder and that they do not contain anything which was harmful to defendant and defendant was in no way prejudiced by giving them.

Defendant complains that the court erred in giving instruction No. 30. This instruction is in the language of R. C. M. 1947, section 94-8803, and was proper. State v. Farnham, 35 Mont. 375, 89 Pac. 728; State v. De Lea, 36 Mont. 531, 93 Pac. 814; State v. Dotson, 26 Mont. 305, 67 Pac. 938.

Defendant complains that the court refused her offered ■ [11] structions Nos. 7, 9, 12 and 13. These offered instructions related to circumstantial evidence and that a conviction should not be based upon mere suspicion. They were objected to as repetitious, a comment upon the evidence or inapplicable. The court did not err in sustaining the objection and refusing the offered instructions. Other instructions given adequately covered the subject matter.

We think too that the evidence in this case was not in fact circumstantial merely. There was direct evidence of eyewitnesses that defendant and no one else struck deceased. No one testified that someone else struck deceased. Defendant's only explanation is that she did not strike her with a knife. The physical facts show that the deceased was struck with a knife or other sharp instrument and refute the story of defendant.

We have carefully considered all the instructions given and refused and find no reversible error on this account.

The next contention of defendant springs from evidence given in connection with exhibits consisting of bottles of liquor seized

by the police officers from the apartment of defendant on the evening of the homicide shortly after the killing.

When the officers arrived at the apartment there were whiskey and wine bottles sitting in the middle of the floor of the living room. William O'Neill and Mrs. Callan were taken to the police station for questioning. The officers later returned to the apartment with William O'Neill and took the liquor in their possession.

It was the theory of the prosecution that it was competent for it to show the interest of the witness O'Neill who was a witness for, and a close friend of defendant. The state's view was that he was preparing to dispose of the liquor and thus in some way protect defendant against what he might have thought was damaging evidence. The state did not however offer the exhibits in evidence. The court was not asked to admonish the jury to disregard the evidence relating to the liquor. No motion was made to strike the evidence from the record. Also, if the evidence were improper, we fail to see how it could be said to be prejudicial since defendant testified that she frequently drinks liquor.

Defendant complains that the county attorney on her cross-examination asked if it were true that in 1948 officer Peres had to go to the Colonial Hotel and take a knife from her for the reason that she was afraid O'Neill was going to attack her. No objection was made to this question. She answered that it was not true. Questions relating to the admission of evidence will ordinarily not be reviewed unless proper and timely objection is made in the trial court. 4 C. J. S., Appeal and Error, sec. 290, p. 561.

This court has held that the mere asking of a question designed to degrade a witness is reversible error. State v. Shannon, 95 Mont. 280, 26 Pac. (2d) 360. But here there was nothing in the question that would in any way tend to degrade the witness. The question did not assume that the witness had committed some other crime. Nor did the question

imply that defendant had been guilty of any particular wrongful act.

Defendant predicates error from the following proceedings. On the direct examination of officer Bailey the state showed without objection that he and another witness searched the Colonial apartment on the night of the homicide for a paring knife. None was found. They did find a rack that knives slip into. It contained one knife. The rack was produced in court. It was offered in evidence but the court sustained defendant's objection to its receipt in evidence. No motion was made to strike the evidence relating to the exhibit and the court was not asked to admonish the jury to disregard the evidence. Under the circumstances defendant may not place the trial court in error on this account. The evidence likewise related to a collateral matter. The important fact was, did defendant have a paring knife in her hand when she struck the deceased. Presence or absence of a knife in the apartment would not shed any light on whether she had a knife in her hand when she struck deceased.

Finding no reversible error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES FREEBOURN, METCALF and BOTTOMLY concur.

Rehearing denied May 18, 1951.