STATE OF MONTANA, Plaintiff and Respondent, v. ALTA MAY RIVERS, Defendant and Appellant.
No. 9833.
Submitted December 3, 1957. Decided January 31, 1958.
320 Pac. (2d) 1004.

Richard B. Conklin, Great Falls, for appellant.

Forrest H. Anderson, Atty. Gen., Robert J. Emmons, Asst. Atty. Gen., R. V. Bottomly, County Atty., H. Moody Brickett, Deputy County Atty., Great Falls, for respondent. Robert J. Emmons, Asst. Atty. Gen., argued orally.

THE HONORABLE W. W. LESSLEY, District Judge, sitting in place of MR. JUSTICE BOTTOMLY:

This is an appeal from a judgment of conviction; the defendant was convicted of second degree murder, for her alleged wilful omission to provide sufficient food and care for her three month old daughter, Mary Melva Rivers.

Mary Melva Rivers died January 21, 1957; at the time of her death she was age three months and seven days. She weighed six pounds, thirteen ounces at birth; on January 9, 1957 (thirteen days before her death), she weighed seven pounds, two ounces; at death she weighed seven pounds, six ounces. The

record, outside of these salient facts, may be summarized thusly: Doctors found the baby to be grossly underweight; the defendant's home, dishes, children were dirty and ill-kept. The child's entire body·was thin; her bones were prominent. The subcutaneous fat was less than one quarter of a centimeter. The child's digestive tract showed, under microscopic examination, nothing to prevent assimilation of food; no organic disease was found in the abdominal cavity. Heart and lungs were normal. Pituitary gland did not show anything wrong; pancreas was normal. Whether intestinal parasites were present was not completely ruled out. No neck or skull fracture was shown; though a "pin point" of blood was found in the subarachnoid space of the brain.

Much conflict on the defendant mother's feeding of the child is evident in the complex record before us; but no direct evidence of wilful withholding of food from the child appears.

Dr. C. E. Magner, a witness for the State, said on direct, that his examination of the child's body, led him to the conclusion that "examination after death revealed the body was not assimilating its food."

Dr. Clark, another witness for the State, gave the cause of death as malnutrition. He had examined the baby twelve days prior to its death (weighed seven pounds, two ounces) and "was concerned but not alarmed" at its condition at that time. It weighed four more ounces at death than at the time of the doctor's examination.

Dr. Crane's testimony emphasized the baby's condition as due to withholding or lack of food, and malnutrition, but on cross-examination he admitted the brain hemorrhage in the subarachnoid space could have been a cause of death.

The appellant specifies twelve errors. We shall consider them seriatim:

(1) Error for refusing to dismiss the charge of murder in the second degree or advising jury to acquit, at close of State's case.

(2) Error for refusing to dismiss the charge of murder in

the second degree or advising jury to acquit at close of entire case.

(3) Error in permitting leading and inflammatory questions of Dr. Clark.

(4) Allowing questions on cross-examination of the defendant, of circumstances surrounding death of some other infant.

(5) Error as to cross-examination of defendant of other wrongful acts allegedly committed by her, other than the offense of which she was charged.

(6) Denial of appellant's motion for mistrial on basis of alleged prejudicial misconduct of prosecuting attorney in his cross-examination of defendant.

(7-8-9-10-11) Errors in giving certain specified instructions over objection of appellant.

(12) Error in refusing appellant's proposed instruction No. 17.

We consider errors one and two together. There is merit in ▆▆▆▆ error number one. Homicide is "the killing of one human being by another." If the killing is with malice aforethought it is murder. State v. Chavez, 85 Mont. 544, 281 Pac. 352.

If the killing is unlawful, but without malice the homicide is ▆▆▆ manslaughter. State v. Sloan, 22 Mont. 293, 56 Pac. 364. Malice may be express or implied. State v. Dillon, 125 Mont. ▆▆▆ 24, 230 Pac. (2d) 764; R.C.M. 94-2502.

On proof of the homicide by the defendant, malice is presumed. This presumption however does not exist in the presence of evidence tending to show that the act amounts only to manslaughter. State v. Fisher, 23 Mont. 540, 59 Pac. 919; State v. Kuum, 55 Mont. 436, 178 Pac. 288. Or as it was stated in Territory v. Manton, 8 Mont. 95, 106, 19 Pac. 387, 392: "* * * unless the very evidence itself which proves the killing, and that it was done by the prisoner, also shows that it was manslaughter."

Here it must be conceded there is no specific intent to take ▆▆▆ life, Territory v. Rowand, 8 Mont. 110, 19 Pac. 595. The

further question of whether a case for second degree murder for the jury exists is more difficult. While it is true that on proof of the homicide, malice is presumed or implied, and therefore if the defendant would reduce it to manslaughter there must be evidence of reasonable doubt as to the existence of malice. State v. Dillon, supra; State v. Chavez, supra. Still there is an exception or modification to this general rule, most explicit in our Montana law. It is that such a presumption of malice does not exist in the face of evidence tending to show that the acts of the defendant amount only to manslaughter. See above, Territory v. Manton, supra; State v. Fisher, supra. This rule is most important in this case. A careful reading of the record shows that the very evidence constituting the case of the State negates the presence of malice either express or implied. This was true at both stages, at the conclusion of the State's case and at the close of the entire case. It was the State's own witnesses who testified to the feeding of the infant child by the mother; however inadequate or adequate it was, they so testified to that feeding. It was the State's own doctor witness who testified that twelve days prior to the death of the child he examined the child at the mother's request and was "concerned but not alarmed" at the baby's then condition. Witnesses for the State testified as to her feeding her child, amount given was two or three bottles of milk every day, and that the baby usually had a bottle in bed. That she was seen loving and holding the baby and had the child to a doctor. Thus, the very evidence introduced to show the killing negated the wilfulness and either express or implied malice. It was not and could not have been second degree murder on the record.

We do not pass upon either the weight or sufficiency of the evidence as it relates to manslaughter. There is evidence tending to show the capacity, means and ability of the defendant to provide for and properly and sufficiently feed her infant child. The law makes it her duty to do so. R.C.M. 1947, section 61-104. The rule is that the omission to perform an

act required by law can be the basis for manslaughter. Territory v. Manton, supra; State v. Bischert, ........ Mont. ........ 1957, 308 Pac. (2d) 969.

Whether the evidence was sufficient to show the death was ▮▮ not accidental is a question for a jury. State v. Riggs, 61 Mont. 25, 201 Pac. 272; Territory v. Manton, supra; State v. Bischert, supra.

We find substantial error raised by specifications four and five. This excerpt from the record will explain questions involved: ''Q. In the course of your working as a baby sitter were you ever subject of an investigation conducted by a law enforcement agency?'' Here counsel objected that the question constituted an improper method of impeachment. An offer of proof was then made and an objection thereto on same grounds. Further questioning was then had as to various persons defendant might have known, and these questions were then asked of the defendant: ''Q. Now at that time and at that place did you make the statement [referring to alleged statement made by defendant at Malstrom Air Force Base] that you had a child under your control and care in Wallace, Idaho that died?'' And further: ''Q. And did you make the statement at that time and place that the child died was your child?'' Further objection and this line of testimony was abandoned.

States differ on the rule of proper impeachment. Montana's ▮▮ view is clear. Its violation is an invasion of a substantial right. Our applicable section is section 93-1901-11, R.C.M. 1947: ''A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, *but not by evidence of particular wrongful acts,* except that it may be shown by examination of the witness, or the record of the judgment, that he has been convicted of a felony.'' Emphasis supplied. We cannot accept respondent's explanation that this was to test the credibility of the defendant on statements made, and not for their truth or veracity,

or again that it was to show that defendant knew from the death of the child in Idaho that insufficient food would result in a child's death. And finally respondent State and the lower court's view that even though this be error. it was waived by the defendant in her redirect. It was error. State v. Shannon, 95 Mont. 280, 26 Pac. (2d) 360; State v. Kanakaris, 54 Mont. 180, 169 Pac. 42; State v. Smith, 57 Mont, 349, 188 Pac. (2d) 644.

Great damage had been done; a substantial right of the defendant had been invaded. Here charged with murder for failure to feed her child; now asked these improper questions on the very subject in controversy—what else could her counsel do? His efforts to save the day for his client by explaining the matter in redirect is not waiver.

We do not pass upon the alleged errors seven to eleven. These raise contentions on instructions offered by the State and given by the lower court over objections of defendant's counsel; also one instruction offered by the defendant and refused as covered. Instructions, here concerned, give the law of the case. Since, we have already found that said case was tried erroneously insofar as second degree murder is concerned, to weigh each instruction would be useless. We may not assume that the alleged errors relied upon will arise upon a trial for manslaughter.

The evidence here fails to establish second degree murder. The cross-examination of the defendant was prejudicial. Accordingly the judgment is reversed and the cause remanded to the district court of Cascade County with direction to grant defendant a new trial.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES and ANGSTMAN, concur.

MR. JUSTICE ADAIR:

I concur in the result but not in all that is said in the foregoing opinion.