No. 81-150

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JOHN A. CASAGRANDA,

Defendant and Appellant.

---

Appeal from: District Court of the Second Judicial District,
In and for the County of Silver Bow
Honorable Mark P. Sullivan, Judge presiding

Counsel of Record:

For Appellant:

Thomas M. Malee, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert McCarthy, County Attorney, Butte, Montana

---

Submitted on briefs: August 20, 1981

Decided: DEC 10 1981

Filed: DEC 10 1981

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant appeals from his conviction of two counts of aggravated burglary following a jury trial in the District Court of the Second Judicial District of the State of Montana, in and for the County of Silver Bow. Trial commenced on January 20, 1981, and on January 22, 1981, a jury found defendant guilty of both offenses. Defendant's motion for a new trial was denied, and this appeal follows.

Early in the morning of July 6, 1980, a doctor's office and an adjoining pharmacy were burglarized in Butte, Montana. On July 7, 1980, William Hanley was arrested in Missoula, Montana, for a parole violation. Later that day, a box of drugs was found in some bushes near the motel where Hanley had been staying. The box of drugs was later identified as being part of the drugs that were stolen from the Butte pharmacy. Hanley was questioned by the authorities concerning the burglary in Butte, and on July 18, 1980, Hanley gave a statement to Silver Bow County authorities claiming that he had been a participant in the Butte burglary. It was at this time that Hanley implicated his accomplices in the burglary, and named the defendant and another individual. In exchange for this information and his testimony, Hanley was given complete immunity from prosecution.

Hanley informed the authorities that the defendant and another individual burglarized the pharmacy while he waited outside in the car. After the burglary was completed, they all three went to the defendant's home and examined the quantity and types of drugs they had stolen. The next day, the defendant, accompanied by his family, some

friends and Hanley, drove to Missoula, checked into a motel and spent the night in adjoining rooms. Hanley stated that he saw a box of drugs in the defendant's room the night before he was arrested for the parole violation. This was the same box of drugs, according to Hanley's statement, that was found outside the motel the next day.

Based upon Hanley's statement, the defendant was subsequently arrested and brought to trial. Charges against the third individual were dismissed on grounds of insufficient evidence.

The defendant presents two allegations of error:

1. Did certain evidence constitute evidence of other crimes and thereby prejudice the defendant?

2. Was the accomplice's testimony sufficiently corroborated?

The first issue in this case is premised on the idea that certain evidence, a pharmaceutical bottle, was evidence of other crimes and thereby caused the jury to draw prejudicial inferences about the defendant's character.

The pharmaceutical bottle was first brought before the jury when counsel for the defendant was cross-examining the police officer who investigated the burglary. The relevant testimony was as follows:

> "Q. Did you ever have occasion to search Andy Casagranda's apartment? A. Yes, we did.
>
> ". . .
>
> "Q. Did you find anything at all in that apartment which would link Andy Casagranda to this burglary? A. We found some evidence at the Casagranda . . .
>
> "Q. I am just speaking of fruits of the crime, so to speak, or evidence of these burglaries? A. Possibility there was a

prescription or a, not a prescription bottle but a pharmaceutical bottle at the Casagranda residence that was similar . . .

"Q. Now, I am not talking about possibilities. Did you find anything that would link Mr. Casagranda to the crime? A. Not directly.

"Q. So the answer would be 'no'? A. I still have to qualify my answer by saying there was bottle found there that was similar to one taken from the pharmacy, that is used at the pharmacy. Possibility it could have been associated with it."

Then, after several more questions concerning the pharmaceutical bottle, these questions were asked of the police officer:

"Q. Did you determine if that came from Central Pharmacy? A. No, sir, it was never determined.

"Q. So then it does not connect Mr. Casagranda? A. <u>Could not directly connect it, no, sir</u>." (Emphasis added.)

The pharmaceutical bottle was again brought before the jury when defense counsel was cross-examining the owner of the pharmacy. The relevant testimony was as follows:

"Q. At any rate, there's a lot of those little bottles around, right [referring to the bottle in question]? A. I am sure there are.

"Q. Can you positively identify that as coming from your pharmacy?

"MR. WHEAT: Your honor, I think the exhibit should be marked so the record can be clear.

"THE COURT: Is this some other exhibit that isn't marked now?

"MR. MILLER: No, your honor, it is not marked.

"THE COURT: This is an item from box, Exhibit P, right?

"MR. MILLER: No, your honor.

"MR. MALEE: This is a bottle, your honor, that was found when Mr. Casagranda's

apartment was searched.

"THE COURT: If you want to refer to it and it hasn't been marked, let's have it marked so you can refer to it and so the record will show what you are referring to. The Clerk can mark it for you.

"MR. MALEE: There is no connection shown to this case, or this bottle, your honor.

"THE COURT: That is before the Jury now. If you want to pursue the matter, you are going to have to identify it.

"MR. MALEE: Could we have it marked Defendant's 1. (Clerk marked the exhibit.)

"Q. Can you identify this bottle as having come from your pharmacy? A. No, the label has been scratched off.

"Q. There is no way? A. Not to my knowledge.

"Q. There are thousands of these bottles around? A. I am sure there are a lot of them.

"MR. MALEE: In that case, your honor, I won't even offer this.

"MR. MILLER: No objection, your honor."

After this considerable amount of testimony elicited by the defense from two different witnesses concerning the bottle, the State responded by questioning the owner of the Central Pharmacy on redirect examination as follows:

"Q. With reference to what has been marked Defendant's No. 1 and what was marked earlier as Plaintiff's [P-2] are they the same type of bottle. A. Same type of bottle exactly.

"Q. Could you tell from the label on P-2 what is in that bottle ordinarily? A. Codeine Phosphate, 15 miligrams.

"Q. That is an addictive drug? A. Yes.

"Q. Do the drug companies put different types of drugs in different types of bottle? A. Yes.

"Q. Is this type of bottle, these two bottles, Defendant's No. 1 and State's P-2, is this type of bottle used to your knowledge for any other purpose than to keep various

narcotic substances?  A.  I don't recall seeing it used for anything else . . ."

Later, during further redirect of the pharmacy owner, the following discussion took place:

"MR. MILLER:  I am going to offer State's Exhibit P-2 for demonstrative purposes and I believe that I have provided foundation for that with Mr. Stajcar.

"MR. MALEE:  Well, I make the same objection. This has not been tied to Mr. Stajcar's pharmacy and neither has the other bottle, so what are they demonstrating?

"THE COURT:  Let's see that bottle.  This doesn't have a cost label on it.

"MR. MILLER:  It has a mark Mr. Stajcar testified could be a portion of his cost code number.  We are offering this for comparative purposes.  Mr. Malee held up what was labeled No. 1 and we feel there is a relationship that the Jury should be able to discern and for demonstrative purposes P-2 should go in.

"THE COURT:  Not that it necessarily came from Mr. Stajcar's store but to demonstrate this is the type of bottle that holds narcotics.

"MR. MILLER:  And also, as Mr. Stajcar testified, prescriptions are not given out in that type of bottle.

"THE COURT:  All right.  Well, for demonstrative purposes only we will accept into evidence P-2 and overrule the objection.

"MR. MILLER:  Thank you.  For the same reason I would offer Defendant's Exhibit 1 at this time so it can be compared for demonstrative purposes by the Jury with [State's] P-2.

"MR. MALEE:  Your honor, I think we are leading to a conclusion here.  I don't believe it has been said positively that that is the only drug that goes into this bottle . . .

". . .

"MR. MILLER:  Your honor, Mr. Malee identified this bottle with Detective Lee as coming from the Casagranda apartment.  We feel that is . . .

"THE COURT:  If I understand what you are

attempting to do is show that Defendant's Exhibit 1 now, for demonstrative purposes only, is the type of bottle that usually contains narcotics.

"MR. MILLER: That's right.

"THE COURT: And it's also a type of bottle that is not normally issued or handled by drug stores as a prescriptive item.

"MR. MILLER: Yes, your honor.

"THE COURT: It's a pharmaceutical bottle rather than a prescription type bottle?

"MR. MILLER: That's correct.

"THE COURT: For only those purposes then, we will overrule the objection and admit Defendant's Exhibit 1 as -- well, I guess we will just refer to it as Defendant's Exhibit 1, accepted into evidence by motion of the Plaintiff." (Emphasis added.)

In State v. Frates (1972), 160 Mont. 431, 436, 503 P.2d 47, 50, this Court reiterates the general rule concerning evidence of other crimes by stating:

". . . when a defendant is put upon trial for one offense, he should be convicted, if at all, by evidence which shows that he is guilty of the offense alone; and evidence which in any manner shows or tends to show, that he has committed another crime wholly independent, even though it be a crime of the same sort, is irrelevant and inadmissible."

This general rule, along with the exceptions, has been codified in Rule 404(b), Mont.R.Evid., which states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The important language of this rule overlooked by the State is that the rule is not limited to "other crimes." The rule also applies to "wrongs or acts" of the defendant. Here, the testimony concerning the pharmaceutical bottle was

such that a jury could infer from it that the defendant had illegally acquired a bottle used for narcotics. Clearly, this bottle was evidence of "wrongs or acts," if not the evidence of "other crimes," of the defendant.

The general rule set out in Frates, supra, and codified in Rule 404(b), Mont.R.Evid., is to be strictly enforced. This Court in State v. Just (1979), ___ Mont. ___, 602 P.2d 957, 962, 36 St.Rep. 1649, when reviewing other crimes evidence, stated:

> "The general rule should be strictly enforced in all cases where applicable, because of the prejudicial effect and injustice of such evidence, and should not be departed from except under conditions which clearly justify such a departure. The exceptions should be carefully limited, and their number and scope not increased. State v. Tiedemann (1961), 139 Mont. 237, 242-243, 362 P.2d 529, 531."

The State contends that under the test set out in State v. Jackson (1979), 181 Mont. 257, 589 P.2d 1009, 36 St.Rep. 169, other crimes evidence includes only evidence that is connected to wholly independent and unrelated crimes, and does not include evidence that is inextricably related to the crime charged. Further, the State contends that the defendant failed to prove that the bottle was not evidence from another crime and therefore under Jackson the evidence cannot be construed to be evidence of other crimes. This argument is flawed in several important ways.

First, it is axiomatic that the burden of proof does not rest with the defendant, but with the State. Second, the State failed to prove that the bottle was in fact connected with the burglary in Butte. The witnesses for the State testified that there was no connection between the pharmaceutical bottle in the defendant's apartment and the

Butte pharmacy. Again, the bottle was evidence of "other crimes, wrongs or acts" of the defendant and was thereby severely prejudicial to the defendant.

The State's final contention is that the defendant is estopped from alleging error because his counsel opened up the issue of the pharmaceutical bottle. The general rule concerning this contention is set out in State v. Tiedemann (1961), 139 Mont. 237, 243, 362 P.2d 529, 532, as follows:

> "A party does not ordinarily waive his objection to the erroneous admission of evidence by subsequently introducing evidence to disprove the matter testified to, to explain them or to prove facts inconsistent therewith, even though it is of the same kind or nature."

Here, defendant's counsel had received an unsolicited response from the State's witness concerning the pharmaceutical bottle found in the defendant's apartment. This Court, in State v. Rivers (1958), 133 Mont. 129, 135, 320 P.2d 1004, 1007, when referring to defense counsel in a similar situation, stated: "His efforts to save the day for his client by explaining the matter in redirect is not waiver." Defendant's counsel may have discussed the pharmaceutical bottle before the State introduced it into evidence, but this did not waive the defendant's right to object or to urge this as error on appeal. Tiedemann, supra.

Finally, these issues were best summarized by this Court in Tiedemann, where it was stated:

> "The error in the admission of the statement was prejudicial, was not waived by the defendant's introduction to meet that of the State, and was of such a nature that it could not be cured by striking the objectionable portion, nor by instructions to the jury that it was not to consider any remarks not supported by the evidence." 362 P.2d at 532-

533.

The second issue in this case is premised on the allegation that the accomplice's testimony was insufficiently corroborated by the other evidence.

In State v. Standley (1978), 179 Mont. 153, 586 P.2d 1075, 1077, 35 St.Rep. 1631, 1634, this Court held:

> "The rule on corroboration is stated in State v. Cobb (1926), 76 Mont. 89, 245 P. 265. In that case, we held that the corroborating evidence may be supplied by the defendant or his witnesses; it may be circumstantial evidence; it need not be sufficient to sustain a conviction or establish a prima facia case of guilt; and it need not be sufficient to connect the defendant with the crime but must <u>tend</u> to connect him with the crime. In State v. Keckonen (1938), 107 Mont. 253, 84 P.2d 341, we held that where the alleged corroborative evidence is equally consonant with a reasonable explanation pointing toward innocent conduct on the part of defendant, then such evidence does not tend to connect him with the commission of the offense and is in the realm of speculation, not corroboration. Where the claimed corroboration shows no more than an opportunity to commit a crime and simply proves suspicion, it is not sufficent corroboration to justify a conviction upon the testimony of an accomplice. State v. Jones (1933), 95 Mont. 317, 26 P.2d 341; State v. Coleman (1978), Mont., 579 P.2d 732, 748, 35 St.Rep. 560."

Here, the State's evidence merely illustrated that the defendant had an opportunity to commit a crime. The evidence, as a matter of law, was not sufficient when coupled with the testimony of the accomplice to support a conviction. The pry marks, footprints and stolen drugs were never shown to have been connected with the defendant and thereby do not <u>tend</u> to connect the defendant with the crime. The motel records, the box containing the stolen drugs, and defendant's wife's prescription bottle that was found in the bushes outside the motel do no more than place the defendant

in a suspicious circumstance. The explanation given to these facts and circumstances by the accomplice is no more reasonable than the explanation provided by defendant and his wife. Clearly, the State did not present sufficient corroborating evidence to support the accomplice's testimony.

The conviction is reversed and the charges dismissed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices